UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **THL Holding Company, LLC,**<br><br>    Plaintiff,<br>v.<br><br>**Apple, Inc.**<br><br>    Defendant. | Case No.  6:26-cv-00086<br><br>*JURY TRIAL DEMANDED* |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff THL Holding Company LLC ("THL"), for its Complaint against Defendant Apple Inc. ("Apple" or "Defendant") for patent infringement under 35 U.S.C. § 271 relating to U.S. Patent No. 11,350,246 and U.S. Patent No. 11,265,680, alleges as follows:

### I.   PARTIES

1. Plaintiff THL Holding Company LLC ("THL") is a Delaware company headquartered in the Western District of Texas since at least as early as 2011.

2. Defendant Apple Inc. ("Apple" or "Defendant") is a California corporation and maintains a place of business located at One Apple Park Way, Cupertino, California 95014, and may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Apple maintains regular and established places of business within this District including at least the following locations: 12545 Riata Vista Circle, Austin, Texas 78727; 6900 W. Parmer Lane, Austin, Texas 78729; 12801 Delcour Drive, Austin, Texas 78727; 3121 Palm Way, Austin, Texas 78758; 2901 S. Capital of Texas Highway, Austin, Texas 78746.

4. The Western District of Texas specifically houses "Apple's second largest U.S. campus, from which 6,000 Apple personnel work." *Koss Corp. v. Apple Inc.*, No. 6-20-CV-00665-ADA, 2021 U.S. Dist. LEXIS 222697, at *43 (W.D. Tex. Apr. 22, 2021.) Apple has a substantial presence in this District. *Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CV-992-LY, 2019 WL 2035583, at *1, 4 (W.D. Tex. Apr. 8, 2019) (stating that Apple's 1.1 million square-foot campus, separate 216,000 square-foot campus, and 6,000 employees, all located in Austin, is sufficient proof to show that "Apple has a substantial presence in this district.")

5. On information and belief, Apple troubleshoots, distributes, imports, provides service for, and/or sells in Texas and the Western District of Texas devices such as the iPhone 11-17 that infringes the Patents-in-Suit, together with the relevant Apple accessories including AirTags (First and Second Generation) and the AirPods Pro (Second and Third Generation).

## II.     JURISDICTION AND VENUE

6. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* Thus, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Apple. Apple regularly conducts business and has committed acts of patent infringement within this District and the State of Texas that give rise to this action and has established minimum contacts with this District, including purposefully availing itself to, and enjoying the benefits of, the laws of Texas, such that exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple markets,

distributes, offers for sale and/or sells products that infringe the Patents-in-Suit throughout the United States including to customers within the Western District of Texas.

8. Venue is proper against Apple in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because it has maintained regular and established physical places of business in this District and has committed acts of patent infringement in the District. *See In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017). Further, venue is proper because Apple conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

9. On information and belief, Apple has thousands of employees based in the Western District of Texas and does business in this District and across the state of Texas.[1]

10. Apple also operates retail establishments in the Western District of Texas, including retail stores in Barton Creek, Austin, Texas and Domain Northside, Austin, Texas where products that infringe the Patents-in-Suit are sold, demonstrated, and explained to consumers in this District.

11. Apple has placed or contributed to placing infringing products, including but not limited to the iPhone into the stream of commerce via established distribution channels, knowing

---

[1] *See* e.g., Apple checks in with 192-room hotel for billion-dollar Northwest Austin campus, published May 20, 2020 (https://austin.culturemap.com/news/city-life/05-20-20-apple-addssurprising- element-to-1-billion-campus-in-northwest-austin/); Apple bites into North Austin with new $1 billion campus and 5,000 potential jobs, published Dec. 13, 2018 (https://austin.culturemap.com/news/city-life/12-13-18-apple-bites-into-north-austin-with-new-1- billion-campus-and-5000-jobs/); Apple Press Release, Apple expands in Austin, published November 20, 2019 (https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/); Apple getting big tax rebate from Williamson County with Austin expansion, published Dec. 18, 2018 (https://www.kvue.com/article/news/local/apple-could-get-big-tax-break-fromwilliamsoncounty- with-austin-expansion/269-623955430).

or understanding that such products would be sold and used in the United States, including in the Western District of Texas. Apple has also derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of infringing products.

12. Venue is also convenient as Plaintiff THL is headquartered in Austin, Texas, conducts business related to the Patents-in-Suit in this District, and has done so for a decade since its inception.

13. There is a local interest in having this dispute resolved in the Western District of Texas because of the significant connections between the District and the events underlying this action. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021). The Western District of Texas is the home of Plaintiff THL and has been for over a decade such that THL's presence is not recent nor ephemeral. *See In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371, 1378 (Fed. Cir. 2021).

### III. FACTUAL BACKGROUND

**A. Asserted Intellectual Property**

14. THL, and its related company Tree House Labs, sought to change the way in which hardware and software operated together. THL and Tree House Labs, based in this District and through its team of Texas-based inventors, developed the intellectual property asserted against Apple in this action. These inventors include John Howard, Richard Cutler and Robert Kennard. THL is the owner of the intellectual property asserted against Apple in this action.

15. In 2010, THL filed patent application No. 12/713,346 to protect technologies that it pioneered in the industry. As a result of its pioneering technology, THL was awarded several patents that originated with its 2010 patent application.

16. Over the next few years, THL developed a product called the BIKN which operated with the Apple iPhone available on the market at that time. The BIKN was sold with tags that

could be located with an iPhone with additional hardware and software provided by the BIKN. While developing the BIKN, THL worked with related companies based in Austin, Texas. For example, THL worked with InMotion Software LLC to develop the iPhone App that operated with THL's BIKN hardware. The BIKN App, developed based on THL's patent filing, was written and developed by Brian Howard (CTO) and Jeremy Howa (Senior Developer) with THL at InMotion Software, LLC and its common place of business at 601 Great Oaks Drive Round Rock, Texas, 76861.

17. THL's inventors as well as Nancy Crume and Bruce Stuckman – both longtime Texas residents – worked to bring the innovative BIKN hardware and App to fruition. At the time, Nancy Crume was the Chief Marketing Officer for the BIKN.

18. The BIKN product in its packaging is shown below.



19. The BIKN received positive results from the marketplace. THL presented its product at high profile events such as the Consumer Electronics Show ("CES") and has won awards for the innovations in the BIKN. As shown below, CEO John Howard presented the capabilities of the BIKN at CES.



**BIKN CES Video at :14**[2]



**BIKN CES Video at :26**

     20.    Operating out of Austin, Texas, THL commercialized the BIKN. THL, with its related company InMotion Software, even became an Apple Authorized Hardware Vendor to supply its hardware and related software on the Apple iOS platform through the AppStore.

     21.    InMotion was one of Apple's top developers and was approved in the Made for iPhone program. InMotion obtained a Made for iPOD license in 2009.

---

[2] BIKN (Jan. 9, 2012), https://www.youtube.com/watch?v=5GGLGSdwbPk

22. THL states that it met with Apple in person on November 3, 2011 to discuss distribution and sales of the BiKN product through Apple.

23. THL and Apple signed an NDA in 2011. Linda Joo and Julie Klenske of Apple and Nancy Crume of THL were involved in the communications that led to the NDA.

24. In November 2011, after the NDA was entered, representatives of THL, InMotion and Apple met to discuss Apple's retail distribution of the BiKN product. The THL and InMotion representatives included John Howard, Richard Cutler, Rusty Kennard, Nancy Crume, and Brent Roland. The Apple representatives included Casey Harbin, Casey Katayama, Don Ginsberg, and other members of Apple's retail distribution team. THL gave a slide presentation and a live demo of the BiKN in action. The meeting lasted almost two hours.

25. During a break, Apple representatives expressed surprise as to how "old" they thought THL's representatives were. At that time, Apple made clear to THL that "this was a young person's game" and that Apple would advise regarding further interest in dealing with THL. Apple did not continue to work with THL.

26. While THL sales dwindled based on Apple's systematic changes in hardware for its iPhone products, THL remains based in Austin, Texas and maintains is corporate records, archives, and business in this District.

27. THL continued to prosecute patents based on its 2010 filing even as sales of its BIKN products became more difficult based on Apple's changes in hardware.

28. U.S. Patent No. 11,265,680 (the "'680 patent"), titled "Wireless device and Methods for use in a paging network," was duly and legally issued on March 1, 2022. The '680 patent is a continuation that claims priority to patent application No. 12/713,346 filed on February 26, 2010. A true copy of the '680 patent is attached hereto as Exhibit A.

29. U.S. Patent No. 11,350,246 (the "'246 patent"), titled "Wireless device and methods for use therewith," was duly and legally issued on May 31, 2022. The '246 patent is a continuation that claims priority to patent application No. 12/713,346 filed on February 26, 2010. A true copy of the '246 patent is attached hereto as Exhibit B.

30. THL's '246 Patent and the '680 Patent are collectively referred to as the "Patents-in-Suit."

31. THL is the owner of all right, title and interest in the Patents-in-Suit, including the right to sue and recover for past infringement.

32. The Patents-in-Suit, generally speaking, provide specific, non-conventional improvements to existing computer devices to create a system for providing an interactive computing interface for the location and finding of connected hardware devices. The Patents-in-Suit do not claim conventional methods. Instead, the claims of the Patents-in-Suit are particularly advantageous in locating related hardware with a unique and efficient process of utilizing new technology to enable persons to find remote hardware effectively.

**B.    Defendant's Infringing Products**

33. The iPhone 11-17 models ("Accused Products") infringe the asserted patents. These iPhones are configured to wirelessly and precisely locate remote Apple accessories including AirTags (Generations 1 and 2) and AirPods Pro (Generations 2 and 3).

34. Apple introduced the iPhone 11 in or about September 2019.

35. In April 2021, Apple introduced the first generation of its AirTag accessory, together with Apple iOS 14.5.

36. Apple iOS 14.5 introduced, among other features, a "precision locate" function within Apple's FindMy application, to precisely locate the AirTag using the U1 ultra-wideband transceiver included in the iPhone 11 and the AirTag.

37. At the time Apple introduced in the first generation AirTag and iOS 14.5 in April 2021, Apple was continuing to sell the iPhone 11.

38. The iPhone 11 and all subsequent versions of the iPhone included the U1 ultra-wideband transceiver and supported the "precision locate" function within Apple's FindMy application.

39. In September 2022, Apple introduced the second generation of its AirPods Pro, having a case that included the U1 ultra-wideband transceiver that could be located through Apple's FindMy app using the "precision locate" feature.

40. In September 2023, with the rollout of iOS 17, Apple introduced the ability of an iPhone user to share an AirTag that has been paired with that user's phone with another iPhone user, enabling the other iPhone user to locate the AirTag and sound an alert to assist in locating the AirTag.

41. In September 2025, Apple introduced the third generation of its AirPods Pro, having a case that included the U1 ultra-wideband transceiver that could be located through Apple's FindMy app using the "precision locate" feature.

42. In January 2026, Apple introduced the second generation of its AirTag, including the U1 ultra-wideband transceiver that could be located through Apple's FindMy app using the "precision locate" feature.

## Count I:  Infringement Of U.S. Patent No. 11,350,246

43. THL repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

44. Apple has infringed and continues to infringe at least claim 30 of the '246 patent directly or indirectly (by inducing infringement by others) by, inter alia, making, using selling, importing and/or offering for sale iPhone models 11-17 configured for locating Apple AirTags (Generations 1 and 2) and AirPods Pro (Generations 2 and 3).

45. Exhibit C is a claim chart demonstrating how the iPhone models 11-17 infringe claim 30 of the '246 patent.

46. Apple's infringement of the '246 patent is ongoing.

47. THL contends that each limitation is satisfied by Apple. However, if acts constituting direct infringement of the '246 patent are not performed by Apple, such acts are performed by Apple's customers and/or end users using Apple-owned software, who act at the direction and/or control of Apple, with Apple's knowledge. Apple took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the iPhone models 11-17 and Apple-owned software in a manner that infringes claim 30 of the '246 patent. Such steps by Apple include but are not limited to advising and directing customers and/or end users to use the iPhone models 11-17 in an infringing manner; advertising and promoting the use of iPhone models 11-17 in an infringing manner; designing products that require infringement by the end user, and/or distributing instructions that guide end users to use iPhone models 11-17 in an infringing manner. Apple performs these steps, which constitute induced infringement, with knowledge of the patents-in-suit and with the knowledge that the induced acts constitute infringement. Apple is aware that the normal and customary use of iPhone models 11-17 by its

customers and/or end users would infringe the patents-in-suit when used together with Apple AirTags (Generations 1 and 2) and Apple AirPod Pros (Generations 2 and 3). Apple's induced infringement is ongoing.

48. Apple's acts of infringement have caused damages to THL, including but not limited to a reasonable royalty on Apple's sale of infringing products and Apple's sale of related accessories including but not limited to Apple AirTags (Generations 1 and 2) and Apple AirPod Pros (Generations 2 and 3). THL is entitled to recover from Apple the damages it sustained as a result of Apple's wrongful acts in an amount subject to proof at trial.

49. THL has suffered damages as a result of the infringing activities of Apple, and THL will continue to suffer damages as along as those infringing activities continue. THL has been, and will continue to be, irreparably harmed by Defendant's infringing conduct unless Apple is enjoined by this Court

50. THL has no adequate remedy at law.

## Count II:  Infringement of U.S. Patent No. 11,265,680

51. THL repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

52. Apple has infringed and continues to infringe at least claims 13-14 of the '680 patent directly or indirectly (by inducing infringement by others) by, inter alia, making, using, selling, importing and/or offering for sale iPhone models 11-17 configured for locating Apple AirTags (Generations 1 and 2) and AirPods Pro (Generations 2 and 3).

53. Exhibit D is a claim chart demonstrating how the iPhone models 11-17 infringe claim 13-14 of the '680 patent.

54. Apple's infringement of the '680 patent is ongoing.

55. THL contends that each limitation is satisfied by Apple. However, if acts constituting direct infringement of the '680 patent are not performed by Apple, such acts are performed by Apple's customers and/or end users using Apple-owned software, who act at the direction and/or control of Apple, with Apple's knowledge. Apple took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the iPhone models 11-17 and Apple-owned software in a manner that infringes claims 13-14 of the '680 patent. Such steps by Apple include but are not limited to advising and directing customers and/or end users to use the iPhone models 11-17 in an infringing manner; advertising and promoting the use of iPhone models 11-17 in an infringing manner; designing products that require infringement by the end user, and/or distributing instructions that guide end users to use iPhone models 11-17 in an infringing manner. Apple performs these steps, which constitute induced infringement, with knowledge of the patents-in-suit and with the knowledge that the induced acts constitute infringement. Apple is aware that the normal and customary use of iPhone models 11-17 by its customers and/or end users would infringe the patents-in-suit when used together with Apple AirTags (Generations 1 and 2) and Apple AirPod Pros (Generations 2 and 3). Apple's induced infringement is ongoing.

56. Apple's acts of infringement have caused damages to THL, including but not limited to a reasonable royalty on Apple's sale of infringing products and Apple's sale of related accessories including but not limited to Apple AirTags (Generations 1 and 2) and Apple AirPod Pros (Generations 2 and 3). THL is entitled to recover from Apple the damages it sustained as a result of Apple's wrongful acts in an amount subject to proof at trial.

57. THL has suffered damages as a result of the infringing activities of Apple, and THL will continue to suffer damages as along as those infringing activities continue. THL has been, and

will continue to be, irreparably harmed by Defendant's infringing conduct unless Apple is enjoined by this Court.

58. THL has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** THL prays for judgment against Defendant Apple as follows:

A. A determination that Defendant has infringed U.S. Patent No. 11,350,246 literally or under the doctrine of equivalents;

B. A determination that Defendant has infringed U.S. Patent No. 11,265,680 literally or under the doctrine of equivalents;

C. Awarding Plaintiff its damages, together with prejudgment interest and costs, and increasing those damages to three times the amount found or assessed as provided by 35 U.S.C. § 284;

D. A determination that this case is exceptional within the meaning of 35 U.S.C. § 285, and awarding Plaintiff reasonable attorney fees and costs and disbursements in this action;

E. Permanently enjoining and restraining Defendant, its officers, directors, employees, agents, servants, successors, and assigns, and any and all persons acting in privity or in concert with Defendant from further infringement of U.S. Patent No. 11,265,680;

F. Permanently enjoining and restraining Defendant, its officers, directors, employees, agents, servants, successors, and assigns, and any and all persons acting in privity or in concert with Defendant from further infringement of U.S. Patent No. 11,350,246;

G. An award of Plaintiff's taxable costs of this civil action, including interest;

H. An award of any additional costs and disbursements incurred as a result of bringing this action; and

I. Any such other, further, and additional relief that the Court deems reasonable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues triable by a jury.

Dated: February 11, 2026

Respectfully submitted,

By: /s/ John S. LeRoy
Frank A. Angileri
Marc Lorelli
John S. LeRoy
BROOKS KUSHMAN P.C.
150 W. Second St., Suite 400N
Royal Oak, MI 48067
Tel: (248) 358-4400 / Fax: (248) 358-3351
fangileri@brookskushman.com
mlorelli@brookskushman.com
jleroy@brookskushman.com

Charles L. Ainsworth
PARKER, BUNT & AINSWORTH, P.C.
State Bar No. 00783521
100 E. Ferguson, Suite 418
Tyler, Texas 75702
(903) 531-3535
charley@pbatyler.com

*Counsel for Plaintiff*